IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| BLACKBIRD TECH LLC, d/b/a | ) | |
| BLACKBIRD TECHNOLOGIES | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 16-733-GMS |
| | ) | |
| TUFFSTUFF FITNESS, | ) | |
| INTERNATIONAL, INC. AND THE | ) | |
| GYM SOURCE, INC. | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM

### I. INTRODUCTION

On August 22, 2016, plaintiff, Blackbird Tech LLC d/b/a Blackbird Technologies ("Blackbird"), initiated the instant action against defendants TuffStuff Fitness International, Inc. ("TuffStuff"), and The Gym Source, Inc. ("Gym Source") (collectively, "Defendants"). (D.I. 1.) The plaintiff alleges infringement of U.S. Patent No. 6,705,976 ("the '976 patent") which relates to exercise equipment manufactured by TuffStuff. (*Id.* at ¶¶ 12-50.) Presently before the court is TuffStuff's Motion to Dismiss or, In the Alternative, Transfer Venue to the Central District of California pursuant to 28 U.S.C. § 1404(a).[1] (D.I. 10.) For the reasons that follow, the court will grant TuffStuff's Motion to Transfer.[2] (*Id.*)

---

[1] The court will not address the merits of the motion to dismiss for lack of personal jurisdiction.

[2] In a related case, *Blackbird Tech LLC v. Health In Motion LLC et al.*, No. 16-cv-974-GMS, defendants Health In Motion LLC ("HIM") and Leisure Fitness Equipment LLC ("Leisure Fitness") (collectively, "HIM" or "defendants") have filed a motion to transfer (to the Central District of California) the case brought against it by Blackbird asserting the same patent, on similar grounds. HIM has incorporated by reference TuffStuff's arguments in its motion to transfer, *Blackbird Tech LLC, v. Health In Motion LLC et al.*, No. 16-974-GMS, D.I. 27 at 11 n.1, therefore the court's memorandum and order will apply to both cases.

1

## II. BACKGROUND

As described in the Complaint and the parties' briefing, Blackbird is a Delaware limited liability company. (D.I. 1, ¶ 1.) At the time the complaint was filed, Blackbird's principal place of business was located in Boston, Massachusetts (*Id.*), although Blackbird's briefing addressing the instant motion identified its current principal place of business as Concord, Massachusetts. (D.I. 24 at 2.) Blackbird is the assignee and owner of the patent-in-suit. (*Id.* at ¶ 10) TuffStuff is a California corporation with its principal place of business in Chino, California. (*Id.* at ¶ 2.) Gym Source is a New York Corporation with its principal place of business in New York. (*Id.* at ¶¶ 8, 14.) Gym Source allegedly sells and offers to sell the TuffStuff accused products to customers located in Delaware. (*Id.* at ¶ 14.)

## III. STANDARD OF REVIEW

Under 28 U.S.C. § 1404(a), a district court has "broad discretion to determine, on an individualized, case-by-case basis, whether the convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995). The court engages in a two-step inquiry. It first determines whether the action could have been brought originally in the proposed transferee forum and then asks whether transfer would best serve the convenience of the parties and witnesses as well as the interests of justice. *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 725 (D. Del. 2012). It is the defendant's responsibility to demonstrate that transfer is appropriate at each step, *Jumara*, 55 F.3d at 879-80, and, "unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

## IV. DISCUSSION

### A. The Propriety of the Transferee Forum

The court may only transfer an action to a "district or division where it might have been brought." 28 U.S.C. § 1404(a). Accordingly, the court may only grant the defendant's motion to transfer to the Central District of California if venue would have been proper there and if that district court could have exercised personal and subject matter jurisdiction over this action. 17 James Wm. Moore et al., *Moore's Federal Practice* § 111.12[b] (3d ed. 2012).

Blackbird does not contest that it could have brought this action in the Central District of California.[3] (D.I. 11.) Personal jurisdiction would not present a problem, as TuffStuff has its principal place of business and headquarters in Chino, California. (D.I. 1, ¶ 2.) *See Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 196 (D. Del. 1998). Additionally, the Central District of California would have subject matter jurisdiction under 28 U.S.C. § 1338 Under 28 U.S.C. § 1400(b), "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Venue, therefore, would have been proper in the Central District of California, because TuffStuff's headquarters and principal place of business are located in that District. Likewise, personal jurisdiction would have existed due to TuffStuff's presence in California, and subject matter jurisdiction would have existed under 28 U.S.C. §§ 1331 and 1338,

---

[3] In *Blackbird Tech LLC v. Health In Motion LLC et al.*, No. 16-cv-974-GMS, however, Blackbird asserts that defendants have failed to demonstrate the propriety of the proposed transferee forum because Leisure Fitness is not subject to personal jurisdiction in the Central District of California. (D.I. 33 at 2.) The defendants responded that the manufacturer-retailer contractual relationship between HIM and Leisure Fitness establishes personal jurisdiction to the Central District of California. (D.I. 36 at 1-4.) The court agrees that the Central District of California has specific personal jurisdiction over defendant Leisure Fitness in connection with its contractual procurement of the accused products. *Burger King Corp. v. Rudzewicz*, 717 U.S. 462, 473 (1985)("with respect to contractual obligations, we have emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities."

3

and venue would have been appropriate under 28 U.S.C. §§ 1391(b) and 1400(b). Since Blackbird could have brought this action in the proposed transferee venue, the court turns to the second prong of the analysis.

**B. The *Jumara* Analysis**

The court next must determine whether transfer to the Central District of California would serve the interests of convenience and justice. In the Third Circuit, courts do not apply a "definitive formula" when considering a motion to transfer. Instead, the analysis is done on a case-by-case basis during which consideration must be given to both private and public interests—the so-called "*Jumara* factors." *See Jumara*, 55 F.3d at 879. The private interests may include: the plaintiff's choice of forum; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties; the convenience of the expected witnesses; and the location of the books and records. *Id.* The relevant public interests include: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id.* at 879-80. The court addresses each of these in turn.

**1. Private Interest Factors**

a. *Plaintiff's Forum Preference*

The first private interest factor is the "plaintiff's forum preference as manifested in the original choice." *Jumara*, 55 F.3d at 879. As a general matter, the court accords substantial deference to this forum decision. *Shutte*, 431 F.2d at 25 ("It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice 'should not be lightly disturbed.'"). The plaintiff's preference, however, is not

"effectively dispositive of the transfer inquiry," and the court accords this factor less weight in certain situations. *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011); *see also Mitek Sys., Inc.*, 2012 WL 3777423, at *4 (D. Del. August 30, 2012). Specifically, the Federal Circuit has warned that "[w]hen a plaintiff brings its charges in a venue that is not its home forum . . . that choice of forum is entitled to less deference." *In re Link_A_Media*, 662 F.3d at 1223.

TuffStuff argues that Blackbird's choice of forum is entitled to little weight, because Blackbird has filed outside of its home forum and has no genuine connection to Delaware apart from litigation. (D.I. 11 at 15-16.) TuffStuff asserts that Blackbird is a non-practicing entity with a principal place of business in Boston, Massachusetts, which "designs nothing, manufactures, nothing, imports nothing, and sells nothing in Delaware or anywhere." (*Id.* at 16.) TuffStuff also asserts that Blackbird's "illusory" connection to Delaware, evidenced by its state of incorporation, is not a factor for a venue inquiry under § 1404 or *Jumara*. (*Id.* at 16-17.)

Blackbird responds that the plaintiff's choice of forum is a factor to be weighed heavily in a § 1404 analysis. (D.I. 24 at 16 (citing *Tessera, Inc. v. Sony Electronics Inc.*, No. 10-cv-838 (RMB)(KW), 2012 WL 1107706, at *3 (D. Del. Mar. 30, 2012). Blackbird maintains that as a Delaware limited liability company it is litigating in its home forum and its choice of venue is entitled to "paramount consideration." (D.I. 24 at 16 (citing *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 754 (D. Del. 2012); *Shutte*, 431 F.2d at 25).) Moreover, Blackbird asserts that it chose to incorporate and litigate in Delaware for "rational and legitimate reasons." (D.I. 24 at 17.) According to Blackbird, Delaware is its "home turf" and its incorporation in Delaware weighs strongly against transfer. (*Id.* (citing *Tessera*, 2012 WL 1107706, at *3 (citation omitted) ("Plaintiff's incorporation in Delaware represents a rational and legitimate reason to choose to litigate in the state.").)

5

Because Blackbird is organized under Delaware law, the court must accord some deference to its decision to file this action in Delaware. However, the fact that Delaware is not home to Blackbird's principal place of business reduces somewhat the weight this factor is accorded. *See Mitek Sys., Inc.*, 2012 WL 3777423, at *5; *Smart Audio Techs., L.L.C. v. Apple, Inc.*, 910 F. Supp. 2d 718; *see also In re Link_A_Media Devices, Corp.*, 662 F.3d at 1222-23 ("When a plaintiff brings its charges in a venue that is not its home forum . . . that choice of forum is entitled to less deference."). Furthermore, the court has recognized that a non-practicing entity with minimal connections to Delaware cannot reap the full benefits of heightened deference. *Memory Integrity, LLC v. Intel Corp.*, 2015 U.S. Dist. LEXIS 17813, at *6-7 (D. Del. Feb. 13, 2015); *see Ithaca Ventures k.s. v. Nintendo of America Inc.*, No. 13-cv-824-GMS, 2014 WL 4829027, at *2-3 (D. Del. Sept. 25, 2014) (the weight afforded to plaintiff's choice of forum was minimized where recent corporate organization was determined to be motivated significantly by litigation efforts). As such, this factor weighs minimally against transfer.

b. *Defendant's Forum Preference*

The second private interest factor is the defendant's forum preference. *See Jumara*, 55 F.3d at 879. Here, TuffStuff clearly prefers to litigate in the Central District of California, the District where it operates its principal place of business and headquarters. (D.I. 11.) This factor weighs in favor of transfer.

c. *Whether the Claims Arose Elsewhere*

The court next considers where Blackbird's claim arose. *Jumara*, 55 F.3d at 879. "[A]s a matter of law, a claim for patent infringement arises whenever someone has committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority." *Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d 376, 381 (D. Del. 2012)

6

(quoting 35 U.S.C. § 271(a)). Importantly, however, courts have recognized that "[t]o some extent, [infringement] claims ar[i]se where the allegedly infringing products [a]re designed and manufactured." *Smart Audio Techs.*, 910 F. Supp. 2d 718, 730 (quoting *Wacoh Co. v. Kionix, Inc.*, 845 F. Supp. 2d 597, 602 (D. Del. 2012)); *see also Linex Techs, Inc. v. Hewlett-Packard Co.*, No. 11-cv-400-GMS, 2013 WL 105323 (D. Del. Jan. 7, 2013) (noting that "infringement claims have even deeper roots in the forum where the accused products were developed."); *see also Intellectual Ventures*, 842 F. Supp. 2d at 755 ("[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor.") (internal quotations omitted). Since the products relevant to this litigation "were designed in California, and [TuffStuff] has never directly sold any of the accused products in Delaware," the court finds this factor weighs in favor of transfer. (D.I. 11 at 17.)

d. *Convenience of the Parties*

The fourth *Jumara* private factor is the "convenience of the parties as indicated by their relative physical and financial condition." 55 F.3d at 879. In this assessment, the court weighs several considerations, including: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Smart Audio Techs.*, 910 F. Supp. 2d 718, 731 (internal quotation omitted).

TuffStuff suggests that litigating in the Central District of California is more convenient. Specifically, TuffStuff notes that: (1) TuffStuff and all of its employees are located in the Central District of California within approximately 30 miles of the Central District's courthouses and 2700 miles from the District of Delaware; (2) Blackbird will have no employees who will be fact

witnesses in the case; and (3) at most, only one fact witness resides in Delaware (the inventor). (D.I. 11 at 17-18.) In sum, TuffStuff contends that the convenience gained by litigating in California outweighs the burden of a potentially longer flight for Blackbird, particularly in light of the fact that Blackbird will have to produce only one witness. (*Id.*)

To the contrary, Blackbird rejects TuffStuff's reliance on the convenience of "unknown" fact witnesses who may have to travel to Delaware for trial. (D.I. 24 at 18.) Blackbird argues that Delaware is a convenient forum for it "because it chose to litigate in this District and it is simultaneously litigating a related case here." (*Id.*) Blackbird further argues that as the smaller company the relative physical and financial burden tips in its favor. (*Id.*)

This *Jumara* factor requires the court to determine how much inconvenience each party will suffer should it be forced to litigate in the other party's desired forum as opposed to its own. The court does not believe TuffStuff's size tips this factor in favor of Blackbird, because TuffStuff is not a large company as evidenced by its single office and 67 employees. (D.I. 30 at 8.) Neither party provides documentation to show a financial resources disparity or lack thereof. Keeping this case in Delaware would cause TuffStuff at least moderate inconvenience given its physical distance from Delaware. The court believes Blackbird, given its location, structure of its company, and lack of substantial connections to Delaware, would suffer little added inconvenience were this case transferred away from its preferred forum. Therefore, the court finds that this factor weighs heavily in favor of TuffStuff.

### e. *Convenience of the Witnesses*

The court next considers "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. TuffStuff insists that convenience of the witnesses is best achieved in the proposed transferee

8

forum because: (1) TuffStuff will likely be the source of the most relevant witnesses and the majority of these witnesses are located in the Central District of California; (2) there is likely one witness who resides in Delaware; (3) all witnesses responsible for the design, manufacture, and marketing of the accused products are located in California. (D.I. 11 at 18.) Blackbird responds that TuffStuff has failed to identify any third party witnesses that would favor transfer to the Central District of California. (D.I. 24 at 18.) Blackbird also notes that the inventor of the patent-in-suit is a Delaware resident and has indicated that Delaware is a more convenient forum. (*Id.*)

As an initial matter, the court recognizes that "[p]arty witnesses or witnesses who are employed by a party carry no weight in the 'balance of convenience' analysis as each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998). Here, Blackbird has submitted a declaration substantiating—and TuffStuff has conceded—that the sole third-party witness identified favors the Delaware forum. (D.I. 24 at 18; D.I. 30 at 8.) In contrast, TuffStuff has failed to demonstrate that relevant witnesses will be unavailable for trial should this litigation proceed in the District of Delaware. This factor therefore disfavors transfer.

### f. *Location of Books and Records*

Finally, the court accounts for "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879. TuffStuff asserts that the bulk of the relevant evidence is likely to be located in the Central District of California, as TuffStuff is based in the Central District of California. (D.I. 11 at 18.) Blackbird, however, asserts that TuffStuff has failed to show that its documents cannot be easily produced electronically in Delaware. (D.I. 24 at 18-19.) In addition, Blackbird, noting that the inventor

9

likely possesses relevant evidence, argues that the inventor's proximity to and preference for Delaware disfavors transfer. (*Id.* at 19.)

In consideration of the parties' arguments and the relevant law, the court agrees with TuffStuff on this point. Courts have recognized that "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009); *see also Smart Audio Techs.*, 910 F. Supp. 2d 718, 732. Because TuffStuff is physically located in the Central District of California, it is reasonable to presume that much of the evidence will be found there. Though the court appreciates Blackbird's argument that modern technology makes transporting electronic evidence less onerous, the court must nevertheless accord at least some weight to this factor. *See In re Link_A_Media Devices Corp.*, 662 F.3d at 1224; *Smart Audio Techs.*, 910 F. Supp. 2d 718, 732. As such, this factor weighs slightly in favor of transfer.

2. Public Interest Factors

The parties do not address or do not dispute four of the public interest factors: enforceability of the judgment, public policies of the forum, local interest in the litigation, and the familiarity of the presiding judge with the applicable law. As such the court excludes these factors from its analysis and considers them neutral. However, the parties do address practical considerations and court congestion.

*a. Practical Considerations*

*Jumara* instructs that courts should look to "practical considerations that could make the trial easy, expeditious, or inexpensive." 55 F.3d at 879. Because the practical considerations

10

factor is a "public interest" factor, "at least some attention" must be paid to the *public* costs of litigation. *ChriMar Sys., Inc. v. Cisco Sys. Inc..,* 2013 WL 828220, at *7 (D. Del. Mar. 6, 2013).

TuffStuff does not explicitly address practical considerations, but its reply brief reiterates the convenience arguments made in the private factor context. Because TuffStuff fails to address the broader public costs, the court discounts TuffStuff's argument. Blackbird, in contrast, argues that the co-pending case in the District of Delaware, *Blackbird Tech, LLC v. Health In Motion LLC et al.,* Case No. 16-974-GMS, concerning the '976 patent counsels against transfer based on the efficiency of litigating related cases together. (D.I. 24 at 19-20 (citing *Graphics Props. Holdings, Inc. v. Asus Computer Int'l, Inc.* 964 F. Supp. 2d 320, 330 (D. Del. 2013).) This argument is unavailing. Blackbird's argument seems to presume the court will deny the defendants' motion to transfer in the related action. The court suspects the parties are aware of the old adage about assumptions. Accordingly, this factor is neutral.

### b. Court Congestion

The court next turns to the "relative administrative difficulty in the two fora resulting from court congestion." *Jumara,* 55 F.3d at 879. While the relative size of the districts' respective caseloads is typically not a sufficient justification for transfer alone, "increased times from filing to disposition and trial are important factors that do influence the court's calculus." *Ithaca Ventures,* 2014 WL 4829027, at *6 (D. Del. Sept. 25, 2014). According to the Federal Court Management Statistics cited by TuffStuff, the median time from filing to trial for civil cases in Delaware is 24.2 months, compared to 19.8 months for the Central District of California. (D.I. 11 at 19, Ex. D.) The median times for all dispositions is 12.5 months for Delaware, compared to 5 months for the Central District of California. (*Id.*)[4] TuffStuff does not directly

---

[4] The court notes that, in the same time since the instant motion was filed and briefed, the statistics have been updated. *See Federal Court Management Statistics,* U.S. COURTS (December 2016),

address these statistics, but Blackbird argues that these statistics are relevant to judicial economy and favor transfer. (*Id.*) Based on the metrics available to the court, the District of Delaware appears more congested than the Central District of California. The court finds that this factor slightly favors transfer.

C. Transfer Analysis Summary

Considering the *Jumara* factors as a whole, the court believes that TuffStuff has met its burden of demonstrating that the interests of justice and convenience strongly favor transfer. Only two factors counsel against transfer. Blackbird's forum preference weighs against transfer but, as the court explained above, that preference does not warrant maximum deference in this case, particularly because Delaware is not its "home turf" or principal place of business. Additionally, the convenience of the witnesses slightly disfavors transfer. On the other hand, several factors counsel transfer: the defendant's choice of forum, convenience of the parties, location where the claim arose, the location of relevant books and records, and court congestion.

V.  **CONCLUSION**

For the reasons discussed above, the court will grant both TuffStuff's Motion to Transfer (D.I. 10) and HIM's Motion Transfer (D.I. 26) to the Central District of California pursuant to 28 U.S.C. § 1404(a).

Dated: April 27, 2017

UNITED STATES DISTRICT COURT

---

http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2016.pdf. The more recent figures put Delaware's time to trial at 24.5 months, versus 19.4 for the Central District of California. The overall disposition times are 9.2 months for Delaware, versus 5 months for the Central District of California.

12